

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| NATHANIEL GRANT,<br>        Plaintiff,<br><br>vs.<br><br>LOWE'S HOME CENTERS, LLC,<br>BEAMER'S PIGGYBACK SALES<br>& SERVICE, XPO LOGISTICS, LLC,<br>NORMAN SMITH, MICHAEL<br>HAMILTON, and ALICE GRANT, *as*<br>*personal representative of the Estate of*<br>*Marion Jerome Mack*,<br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.: 5:20-02278-MGL |

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REMAND**

## I.    INTRODUCTION

Plaintiff Nathaniel Grant (Grant) brought this action alleging claims of negligence and negligent entrustment against Lowe's Home Centers, LLC (Lowe's), Beamer's Piggyback Sales & Service (Beamer's), Norman Smith (Smith), Michael Hamilton (Hamilton), and Alice Grant, as personal representative of the Estate of Marion Jerome Mack (Mack) in the Orangeburg County Court of Common Pleas.  Grant later added XPO Logistics, LLC (XPO) as a party.  The case was subsequently removed to this Court under 28 U.S.C. § 1441(c).

According to XPO, Lowe's, and Beamer's (collectively, shipment-related defendants), this Court has jurisdiction over the matter in accordance with 28 U.S.C. § 1331.

Pending before the Court is Grant's motion to remand the matter to state court. Having carefully considered Grant's motion, the responses, the replies, the record, and the applicable law, it is the judgment of the Court Grant's motion will be granted, and the matter will be remanded to the Orangeburg County Court of Common Pleas.

**II.     FACTUAL AND PROCEDURAL HISTORY**

This case arises from a multi-vehicle accident on I-95 at Lake Marion Bridge. Smith, on behalf of Beamer's, was transporting a truck owned by Lowe's on a flatbed trailer and allegedly caused a chain-reaction collision, resulting in injuries to Grant and the death of Mack.

Lowe's had hired XPO as a freight broker to arrange for transportation of the Lowe's truck to its ultimate destination, and XPO selected Beamer's as the motor carrier to physically transport the Lowe's truck. Smith ultimately transported the Lowe's truck on behalf of Beamers.

A freight broker is defined by the relevant statute as a "person, other than a motor carrier or an employee of a motor carrier, that as a principal or agent sells . . . or arrang[es] for, transportation [of freight] by motor carrier for compensation." 49 U.S.C. § 13102(2). And, as is applicable here, a motor carrier "means a person providing motor vehicle transportation for compensation." *Id.* § 13102(14).

According to Grant, Smith's truck cab and trailer struck the rear end of Hamilton's vehicle, which then hit the rear end of Mack's vehicle, which then collided into the back of Grant's vehicle. Grant alleges the impact of Mack's vehicle upon his own caused him to sustain serious injuries and medical expenses.

Grant filed this action in the Orangeburg County Court of Common Pleas on June 17, 2019. Grant named Lowe's, Beamer's, Smith, Hamilton, and Mack as defendants, asserting a claim for

negligence against each of them, as well as an additional claim of negligent entrustment against Lowe's and Beamer's. Grant, two days later, filed an amended complaint to rectify a typographical error. All substantive allegations in the amended complaint remained unchanged.

Approximately one year later, on June 16, 2020, Grant filed a second amended complaint, naming XPO as a defendant and alleging its role as a freight broker in the transport of the Lowe's truck being carried by Smith at the time of the accident. Specifically, Grant alleged Lowe's negligently entrusted the Lowe's truck to XPO and that XPO then negligently entrusted or brokered the shipment of the Lowe's truck to Beamer's and Smith, which ultimately led to the collision.

XPO, on the same day Grant filed his amended complaint, removed the case to federal court. Grant now seeks to remand the matter to state court.

### III.     STANDARD OF REVIEW

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Because removal jurisdiction raises significant federalism concerns, [a court] must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "If federal jurisdiction is doubtful, a remand is necessary." *Id.*

Federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under federal question jurisdiction, the well-plead compliant rule applies. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This requires "a federal question [be] presented on the face of the plaintiff's properly pleaded

complaint." *Id.* This means a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* (footnote omitted).

"Thus, it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393.

"There does exist, however, an 'independent corollary' to the well-pleaded complaint rule, known as the 'complete pre-emption' doctrine." *Id.* (internal citation omitted). "On occasion, the [Supreme] Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

**IV.     DISCUSSION AND ANALYSIS**

Of the multiple arguments Grant makes in support of his position this matter must be remanded, one is dispositive. Accordingly, the Court will now address this argument.

Grant posits the shipping-related defendants' argument his negligence claim is completely preempted by the Federal Aviation Administration Authorization Act (FAAAA) is incorrect, as the existence of the safety exception, which the Court will discuss below, "demonstrates that Congress did not intend for there to be complete preemption, because the law does not indisputably displace *all* state causes of action over the given subject matter." Reply at 6.

The shipment-related defendants, on the other hand, aver Grant's negligence claim against freight broker XPO is completely preempted by federal law such that the Court has federal question

jurisdiction over the matter. Particularly, the shipment-related defendants argue the FAAAA's preemption clause, 49 U.S.C. §14051(c)(1), completely preempts state common law negligence claims, including claims for personal injuries, against a freight broker such as XPO.

The Court, prior to addressing Grant's position, thinks a brief refresher of the FAAAA is warranted. Congress, in 1994, passed the FAAAA, in part, to complete the deregulation of the trucking industry. *See Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 263 (2013) ("Congress completed the deregulation [of the trucking industry] 14 years [after first passing the Motor Carrier Act of 1980 that started the trucking industry deregulation process], in 1994, by expressly preempting state trucking regulation."). "Concerned that state regulation impeded the free flow of trade, traffic, and transportation of interstate commerce, Congress resolved to displace '*certain* aspects of the State regulatory process.'" *Dan's City*, U.S. at 263 (citation omitted) (internal quotation marks omitted).

The preemption clause of the FAAAA provides, as is relevant here:

(1) General rule.–Except as provided in [the safety exception of Paragraph 2(A)] . . . a State, political subdivision of a State, or political authority of [two] or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of . . . [a] motor private carrier, broker, or freight forwarder with respect to the transportation of property.

(2) Matters not covered.—Paragraph (1)—

(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . .

49 U.S.C. § 14501(c).

In support of Grant's position the safety exception, Section 14501(c)(2), forecloses the shipping-related defendants' contention his claims are completely preempted by the FAAAA, he directs the Court to a recent Ninth Circuit case that held a plaintiff's general negligence claims against a freight broker fell within the safety exception of Section 14501(c)(2)(A). *See Miller v.*

5

*C. H. Robinson*, 976 F.3d 1016 (9th Cir. 2020). As an initial matter, no other federal appellate court outside of the Ninth Circuit has addressed this issue.

In *Miller*, the Ninth Circuit noted "Congress's clear purpose in enacting the safety exception, then, was to ensure that its preemption of States' economic authority over [the trucking industry] . . . not restrict the States' existing power over safety." *Id.* at 1026 (internal quotations and citations omitted). The Court in *Miller* went on to note:

> We find nothing in the FAAAA's legislative history that suggests Congress intended to eliminate this important component of the States' power over safety. A House Conference Report, for instance, notes that a key interest group abandoned its opposition to the FAAAA subject to "some conditions that would allow regulatory protection to continue for non-economic factors, such as . . . safety," and the conferees "attempted to address these conditions" by carving out the various exceptions in § 14501(c)(2).

*Id.* (quoting H.R. Conf. Rep. 103-677, at 88).

The shipping-related defendants, in their responses, briefly counter Grant's safety exception argument and posit because the word broker "is not mentioned once in [Section] 14501(c)(2)" this omission demonstrates "had Congress intended any portion of a broker's activities to be governed by state law, [Section] 14501(c)(2) would have been the place to include it." XPO's Response in Opposition at 9; Beamer's Response in Opposition at 9.

The Court finds this argument unpersuasive and adopts the reasoning of *Miller*. "Historically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as a 'critical component of the States' traditional ability to protect the health and safety of their citizens.'" *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 544 (1992) (Blackmun, J., concurring in part and dissenting in part)).

Grant's common law negligence claim against XPO—resulting from its alleged negligent procurement of a trailer to transport the Lowe's truck on the roads of South Carolina—represents a valid exercise of the state of South Carolina's police power to regulate safety.  And, the Court believes a negligence claim such as Grants, that is centered on XPO's efforts to place trailers on South Carolina highways, concerns motor vehicles so as to fall under the FAAAA's safety exception, Section 14501(c)(2)(A).

Furthermore, the Fourth Circuit's holding in *Pinney v. Nokia, Inc.*, 402 F.3d 430, 450–51 (4th Cir. 2005) lends additional support to Grant's safety exception argument.  In *Pinney*, consumers filed multiple class action lawsuits against manufacturers and distributors of wireless telephones in numerous state courts alleging various tort claims.  *Id.* at 439.

When determining whether certain sections of the Federal Communications Act (FCA) completely preempted Plaintiffs' claims, the *Pinney* Court noted, among other things, the "presence of a savings clause [in the FCA that asserts nothing within the FCA alters existing remedies at common law or by statute] counsels against a finding that Congress intended to sweep aside all state claims in a particular area", thus precluding a finding of complete preemption.  *Id.* at 450.

The same reasoning applies here and bolster's Grant's argument the presence of the safety exception in the FAAAA demonstrates "Congress intended to preserve state law claims such as the ones asserted" in this case.  *Id.* at 451.

In sum, here, XPO's procurement of a trailer to transport the Lowe's truck via public roadways on behalf of its client, and the liability flowing from the underlying accident, fall within the state of South Carolina's ability to protect the safety and well-being of its citizens, thus precluding complete preemption under the FAAAA.  *See generally* Section 14501(c)(2)(A) ("the

preemption provision] shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . .").

Because the FAAAA's safety exception, Section 14501(c)(2)(A), precludes complete preemption, the Court need not address the parties' other arguments.

V.     **CONCLUSION**

For the reasons stated above, it is the judgment of the Court Grant's motion to remand is **GRANTED,** and the matter is **REMANDED** to the Orangeburg County Court of Common Pleas for further adjudication.  All other motions are thus **RENDERED AS MOOT.**

   IT IS SO ORDERED.

Signed this 28th day of January 2021, in Columbia, South Carolina.


                              s/ Mary Geiger Lewis
                              MARY GEIGER LEWIS
                              UNITED STATES DISTRICT JUDGE

8